Margaret B. HALL, Plaintiff
and Appellant,

v.

PROCESS INSTRUMENTS AND CON-
TROL, INC., a Utah corporation,
Defendant and Appellee.

No. 920332–CA.

Court of Appeals of Utah.

Dec. 28, 1993.

Scott B. Mitchell (Argued), Salt Lake City, for plaintiff and appellant.

James A. McIntyre (Argued), Richard R. Golden, Salt Lake City, for defendant and appellee.

Before BILLINGS, GREENWOOD and RUSSON, JJ.

## OPINION

GREENWOOD, Judge:

Margaret B. Hall appeals from the trial court's ruling of no cause of action on her claim of breach of contract. Mrs. Hall alleged at trial that an employment contract with her former husband's company, Process Instruments and Control, Inc. (Process), for a salary of $1000 per month over a period of three years was in reality an alimony agreement, and therefore the fact that she did not ever actually work for Process was immaterial. The court found that, on its face, the contract was an unambiguous employment agreement and that Mrs. Hall had breached its terms. In the alternative, the trial court found that if the contract were an alimony agreement, it ceased to have any effect upon Mrs. Hall's remarriage. We affirm.

## FACTS

John A. Hall filed for divorce on February 20, 1981. On approximately the same date, the parties agreed on a settlement, later incorporated into the decree of divorce, whereby Mrs. Hall would receive no alimony but would be entitled to $50,000 from the sales proceeds of the house, and Mr. Hall would transfer title to a Mercedes automobile to her. In addition, Mr. Hall instructed Peter Ennenga, Process's corporate counsel, to draft an employment contract between Process and Mrs. Hall for a period of three years at a monthly salary of $1000.

Mr. Hall is the president of Process as well as its sole stockholder. He testified that he offered Mrs. Hall employment with Process because she was very ill with hepatitis and needed income and health insurance for the period of time immediately following the divorce. He claimed that Mrs. Hall was not expected to actually work at Process until her health improved, and that she would make up for the initial time she could not work by working beyond the contract period without pay. In contrast, Mrs. Hall claimed that the employment contract was a form of alimony, and that the parties never anticipated that she would actually perform any work for Process. Regardless of the parties' intent with respect to this agreement, Process paid Mrs. Hall for fourteen months, despite the undisputed fact that Mrs. Hall never worked for Process.

In May of 1982, Process sent Mrs. Hall a final check and separation notice, informing her that she had been terminated for failure to show up at work. Mr. Hall claims that he learned in the fall of 1981 that Mrs. Hall had accepted employment with another firm, Struve Distributing, and therefore realized that Mrs. Hall was well enough to work and in a position to honor her contract with Process.

On May 25, 1982, Mrs. Hall filed a complaint alleging wrongful discharge, claiming she had "fully performed the obligations and rendered the services contemplated by said agreement and ... continues to be able and willing to perform such obligations." Mrs. Hall neglected to pursue the case until September of 1990 when the trial court issued an order to show cause why the case should not be dismissed for failure to prosecute. At that time, Mrs. Hall filed a motion to amend her complaint, alleging that she and Process entered into this employment agreement in return for Mrs. Hall's promise to forego alimony. This motion was granted, and the matter went to trial on November 14, 1991.

At trial, the court permitted Mrs. Hall to introduce parol evidence for the limited purpose of establishing whether the contract was an integrated agreement, i.e., a final and complete expression of the parties' agreement. The court then found in favor of Process, granting judgment against Mrs. Hall of no cause of action. In its findings of fact and conclusions of law, the trial court set forth two separate reasons for the judgment in favor of Process. First, the court concluded that because the employment agreement was clear and unambiguous on its face, parol

evidence was not admissible to vary its meaning. Under the terms of this agreement, Mrs. Hall was clearly the breaching party and therefore had no cause of action against Process. In the alternative, if the contract were to be construed as an alimony agreement, the court held that pursuant to Utah Code Ann. § 30–3–5(5) (1989) the agreement terminated upon Mrs. Hall's remarriage.[1]

Mrs. Hall appeals each of the court's alternative rulings. First, she claims that section 30–3–5(5) is not applicable in this case because the employment agreement was not an order of the court, was not entered into between the *parties* (since Process was not party to the divorce), and did not constitute "alimony." Instead, Process was "paying Mrs. Hall to forego any right which she might otherwise have had to seek alimony." Second, Mrs. Hall contends that parol evidence is necessary to elucidate the real meaning of the employment agreement since the parties never intended the written contract to be the full and complete expression of their agreement.[2] Because application of the parol evidence rule is dispositive of this appeal, we need not reach the issue regarding the scope of section 30–3–5(5).

## ANALYSIS

A court asked to interpret a contract may first inquire as to whether the contract is integrated. *Webb v. R.O.A. General, Inc.*, 804 P.2d 547, 551 (Utah App.1991). Because this is a factual determination, "review by an appellate court is limited." *Id.* An integrated contract is an agreement where " 'the parties thereto adopt a writing or writings as the final and complete expression of the agreement.' " *Id.* (quoting *Eie v. St. Benedict's Hosp.*, 638 P.2d 1190, 1194 (Utah 1981)). If a contract is determined to be integrated,[3] the parol evidence rule "excludes evidence of terms in addition to those found in the agreement." *Id.* "If the contract is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement." *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991). "Ambiguous" in this context means that the terms of the contract are "capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.' " *Id.* (quoting *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983)). If the court determines that the contract terms are unambiguous, " 'we interpret them according to their plain and ordinary meaning and extrinsic or parol evidence is generally not admissible to explain the intent of the parties.' " *Equitable Life & Casualty Ins. Co. v. Ross*, 849 P.2d 1187, 1192 (Utah App.), *cert. denied*, 860 P.2d 943 (Utah 1993) (quoting *Larson v. Overland Thrift & Loan*, 818 P.2d 1316, 1319 (Utah App.1991), *cert. denied*, 832 P.2d 476 (Utah 1992)). Whether contractual language is ambiguous is a question of law, reviewed for correctness. *Id.*

The trial court in this case found, after reviewing evidence of the contract's integration, that the terms of the employment agreement appeared to be "complete and certain." Accordingly, the court declined to admit parol evidence to vary the

---

1. Section 30–3–5(5) states in relevant part that "any order of the court that a party pay alimony to a former spouse automatically terminates upon the remarriage of that former spouse." Utah Code Ann. § 30–3–5(5) (1989).

2. Mrs. Hall also claims that the trial court abused its discretion in not admitting Mr. Brent Turley's testimony. Turley allegedly would have testified that Mr. Hall once offered him a salaried position with Process, where he would not actually have had to work, in lieu of a down payment for the purchase of Mr. Turley's home. Given the trial court's determination that the terms of the employment agreement were clear and unambiguous, there was no need for evidence regarding Mr. Hall's intent in drafting this contract. Therefore, the trial court's decision to exclude Turley's testimony on grounds of relevance was a legitimate exercise of discretion.

3. The Restatement (Second) of Contracts notes that "[w]hether there is an integrated agreement is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule." *Restatement (Second) of Contracts* § 209(2) (1981). The Restatement further comments that "[w]hether a writing has been adopted as an integrated agreement is a question of fact to be determined in accordance with all relevant evidence." *Id.* § 209 cmt. c.

terms of the agreement. After reviewing the employment agreement at issue, we agree. The employment agreement unambiguously provides that Mrs. Hall agreed to work for Process for a period of three years at a monthly compensation of $1000. There is no mention in the contract of alimony, nor is Mrs. Hall's agreement to work for Process qualified in any way. In addition, Mr. Hall testified that the parties intended this agreement to be a valid and binding employment contract.

■ Further, even if the trial court had found credible Mrs. Hall's assertion that the parties had an oral agreement to the effect that Mrs. Hall did not have to actually work for Process, this parol evidence is still inadmissible. Only " 'parol evidence *not inconsistent with the writing* is admissible to show what the entire contract really was, *by supplementing, as distinguished from contradicting, the writing.*' " *Webb*, 804 P.2d at 551 (quoting *Stanger v. Sentinel Sec. Life Ins. Co.*, 669 P.2d 1201, 1205 (Utah 1983)). The employment agreement stated that Mrs. Hall "agrees to faithfully perform the duties assigned to her to the best of her ability and to devote such time and skills as shall be necessary therefor" and that "[t]his Agreement shall be in effect through and until the month of February, 1984." Parol evidence indicating that Mrs. Hall was not expected to perform any duties at all for Process clearly contradicts the terms of the written agreement. Therefore, the trial court correctly held that this parol evidence was inadmissible.

■ The trial court found that the parties entered into an employment agreement with "clear and unambiguous" terms. We concur.[4] It is undisputed that Mrs. Hall never worked for Process pursuant to this agreement, and when specifically requested to show up for work and to "perform the duties assigned to her," as the contract provided, she refused. Therefore, Mrs. Hall breached the express terms of the employment agreement and the trial court correctly ruled that she had no cause of action against Process.

## CONCLUSION

Mrs. Hall entered into an employment contract that clearly required her to perform certain duties for Process in exchange for a monthly salary over a period of three years. Parol evidence offered to establish that this contract was in lieu of alimony rather than a bona fide employment contract may not be applied to modify the agreement because this evidence contradicts the express terms of the parties' agreement. Under the express terms of the agreement, Mrs. Hall was clearly the breaching party. For these reasons, the trial court correctly ruled that Mrs. Hall has no cause of action. We affirm.

BILLINGS and RUSSON, JJ., concur.

---

4. Mrs. Hall cites *Colonial Leasing Co. v. Larsen Bros. Construction*, 731 P.2d 483, 487 (Utah 1986), for the proposition that the parol evidence rule "also applies where the *character* of the written agreement itself is ambiguous even though its specific terms are not ambiguous." *Id.* at 487 (emphasis added). The issue in *Colonial Leasing* was whether an agreement purporting to be a lease agreement was really a security agreement for the sale of property. The trial court had excluded parol evidence on this issue after determining the lease agreement was inte-grated. The supreme court noted that there was an issue of fact regarding whether it was industry trade, custom and usage to offer lessees an option to purchase the equipment at the end of the lease term and parol evidence was permissible to resolve this issue. *Id.* at 487–88.

*Colonial Leasing* does not provide support for Mrs. Hall's position. While parol evidence is admissible to clarify the character of an agreement, it is not admissible to contradict the express terms of an agreement.